UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DANIEL REINERT,

       Plaintiff,

v.                                     Case No.  3:18-cv-405-J-MCR

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

       Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for a period of disability and disability insurance benefits ("DIB").  Following an administrative hearing held on February 23, 2017, the assigned Administrative Law Judge ("ALJ") issued a decision, finding Plaintiff not disabled from September 13, 2014, the alleged amended disability onset date, through April 20, 2017, the date of the decision.[2]  (Tr. 12-73.)  Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **REVERSED and REMANDED**.

### I.    Standard of Review

The scope of this Court's review is limited to determining whether the

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 11.)

[2] Plaintiff had to establish disability on or before December 31, 2018, his date last insured, in order to be entitled to a period of disability and DIB.  (Tr. 15.)

Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

Plaintiff argues that the ALJ erred by discounting Plaintiff's need for a cane, by substituting her opinion for Dr. Warren Groff's opinion regarding the need for a cane, and by improperly excluding the need for a cane from the hypothetical question to the vocational expert ("VE"). Plaintiff urges the Court to "remand this

2

case for an additional hearing to evaluate the need for a cane and the vocational impact of the need for a cane." (Doc. 13 at 10.) Defendant responds that the ALJ applied the correct legal standards and her decision is supported by substantial evidence. The Court finds that the ALJ's decision is not supported by substantial evidence and, therefore, remands the case for further proceedings.

## A. Standard for Evaluating Opinion Evidence and Subjective Symptoms

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. § 404.1520(a)(3). With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and

extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam), 20 C.F.R. § 404.1527(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, No. 8:06-cv-1863-T-27TGW, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008). Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 06-15638, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curiam). *See also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. May 2, 2008) (per curiam); *see also* SSR 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources). While the ALJ is not bound by the findings of non-examining

4

physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision.  SSR 96-6p.

When a claimant seeks to establish disability through his own testimony of pain or other subjective symptoms, the Eleventh Circuit's three-part "pain standard" applies.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam).  "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so."  *Id*.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.*

Once a claimant establishes that his pain is disabling through "objective medical evidence from an acceptable medical source that shows a medical impairment that could reasonably be expected to produce the pain or other symptoms, pursuant to 20 C.F.R. § 404.1529(a), "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability," *Foote*, 67 F.3d at 1561.  *See also* SSR 16-3p[3] (stating that after the ALJ finds a medically determinable impairment exists, the ALJ must

---

[3] SSR 16-3p rescinded and superseded SSR 96-7p, eliminating the use of the term "credibility," and clarifying that "subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p.

analyze "the intensity, persistence, and limiting effects of the individual's symptoms" to determine "the extent to which an individual's symptoms limit his or her ability to perform work-related activities").

As stated in SSR 16-3p:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ must] examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.
> . . .
> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.[4] The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.
> . . .
> In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner

---

[4] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures (other than treatment) used to relieve the pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p.

typically used during an adversarial court litigation.  The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person.  Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities[.]

SSR 16-3p.

"[A]n individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed" will also be considered "when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities."  *Id.*  "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, [the adjudicator] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."  *Id.*  However, the adjudicator "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."  *Id.*  In considering an individual's treatment history, the adjudicator may consider, *inter alia*, one or more of the following:

• That the individual may have structured his or her activities to

minimize symptoms to a tolerable level by avoiding physical
activities or mental stressors that aggravate his or her
stressors;

• That the individual may receive periodic treatment or
evaluation for refills of medications because his or her
symptoms have reached a plateau;

• That the individual may not agree to take prescription
medications because the side effects are less tolerable than
the symptoms;

• That the individual may not be able to afford treatment and
may not have access to free or low-cost medical services;

• That a medical source may have advised the individual that
there is no further effective treatment to prescribe or
recommend that would benefit the individual;

• That due to various limitations (such as language or mental
limitations), the individual may not understand the appropriate
treatment for or the need for consistent treatment.

*Id.*

## B.    The ALJ's Decision

At step two of the five-step sequential evaluation process, the ALJ found

that Plaintiff had the following severe impairments: degenerative disc disease,

hypertension, obesity, and affective disorder.  (Tr. 17.)  Then, the ALJ found that

Plaintiff had the RFC to perform light work[5] as follows:

He is able to occasionally lift and carry 20 pounds, and he can
frequently lift and carry 10 pounds.  He can sit or stand for eight
hours each.  He needs to alternate his body posture every 30
minutes.  He can walk for four hours.  He cannot climb ropes,
ladders or scaffolds.  He can occasionally climb ramps and stairs,
and he can occasionally perform the remaining postural activities.

---

[5] By definition, light work involves lifting no more than twenty pounds at a time
with frequent lifting or carrying of objects weighing up to ten pounds; it requires a good
deal of walking or standing, or sitting most of the time with some pushing and pulling of
arm or leg controls.  20 C.F.R. § 404.1567(b); SSR 83-10.

8

> There are no restrictions to the use of his upper extremities.  He
> cannot have any exposure to heights and vibrations.  He is limited to
> simple 1-2 step, unskilled tasks.

(Tr. 19.)

In making this finding, the ALJ discussed, *inter alia*, Plaintiff's subjective

complaints, the objective medical findings, the treatment records, and the opinion

evidence.  (Tr. 20-26.)  The ALJ noted Plaintiff's testimony that "he ha[d] used a

cane for two years," that "he use[d] an electric cart at the store or a wheel chair,"

that he was "often in pain," and that he needed "to lie down to relieve [the] pain."

(Tr. 20.)  The ALJ stated:

> The claimant said he could walk 10 minutes with his cane.  He said
> he could not stand because it [was] very difficult.  He said he could
> sit for 20 minutes.  The claimant said he could lift and carry 10-15
> pounds.  The claimant said he [got] relief from his pain medications.

(*Id.*)  After considering Plaintiff's complaints, the ALJ found that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of his

symptoms were "not entirely consistent with the medical evidence and other

evidence in the record."  (*Id.*)

The ALJ also considered Plaintiff's examination findings and results from

objective diagnostic tests as follows:

> On July 15, 2014, . . . [Plaintiff's] gait was abnormal. . . . There were
> spasms and tenderness in the lumbar spine. . . .
> On August 13, 2014, an MRI of the cervical spine revealed at T3-4, a
> disc herniation and a protruding C3-4 intervertebral disc.  (Ex. 5F)
> An MRI of the lumbar spine done on August 13, 2014 revealed disc
> protrusions on the left side at the L2-3 levels and a left side[d]

subarticular disc herniation at L4-5.  (Ex. 5F)

. . .

Electrodiagnostic studies of the claimant's lower extremities done on February 1, 2016 were abnormal and were consistent with chronic radiculopathy involving the left L5 and to a lesser degree S1 root. (Ex. 18F)  Weight is accorded to the finding of left sided radiculopathy.

An imaging study of the claimant's lumbar spine done on February 21, 2015 revealed multilevel degenerative changes of the thoracic spine, most pronounced at T3-T4 and a stable, benign left intercostal lipoma.  (Ex. 11F)

On February 28, 2015, the claimant was admitted to the hospital after reporting pain going down his legs.  The claimant said he could not walk.  A pulse could not be felt in one foot while the claimant was in the emergency room. . . . The claimant was able to walk with a cane. . . .  Great weight is accorded to the finding that the claimant was able to walk with a cane and to the lumbar x-rays that did not document any new findings.

On March 6, 2015, the claimant had a follow up appointment with his primary care physician, Dr. Groff.  The claimant reported severe left hip pain and anxiety.  . . . He said the Nucynta relieved his pain for three hours. . . . There was decreased range of motion in the left hip. The claimant's gait was antalgic, and he used a quadripod cane in the left hand. . . . Dr. Groff prescribed Fentanyl patches and lorazepam.  Dr. Groff prescribed a wheelchair and a cane.  (Ex. 16F/56)

A myelogram of the claimant's lumbar spine done on March 18, 2015 revealed a prior posterior fusion at L5-S1 without evidence of hardware complication.  A CT of the lumbar spine revealed post-surgical changes status post L5-S1 discectomy, interbody fusion and posterior fusion without evidence of hardware complications.  (Ex. 11F)

. . .

On December 21, 2015, . . . Mr. Reinert reported leg pain, numbness, tingling and weakness. . . . He had reduced strength in the lower extremities.  The claimant walked with a cane, favoring the left leg. . . . Great weight is accorded to the mostly normal muscle testing.

. . . Dr. Tavanaiepour informed the claimant that no neurosurgical intervention was warranted. The claimant was referred to pain management. (Ex. 12F)
. . .

On December 14, 2016, . . . [t]he claimant requested a spinal cord trial. . . . He appeared to be in mild distress and moved slowly and hesitantly. He walked with a slight limp. . . . There was moderate, diffuse generalized tenderness in the lumbar spine. . . .

On January 25, 2017, . . . [t]he claimant walked with a straight cane, but the remainder of the physical exam was normal.
. . .

On June 6, 2016, the claimant participated in a psychological evaluation with Lu Griz, Psy.D. The claimant needed a psychological evaluation to determine his eligibility for an electrical stimulator. The claimant said he was in extreme pain 24 hours a day despite taking pain medications and using pain patches. . . . He said it was difficult for him to watch his grandchildren because of pain and physical difficulties. The claimant fidgeted during the evaluation. He seemed to be in pain and had a difficult time moving or sitting for any length of time.

(Tr. 20-24.)

As to the opinion evidence, the ALJ gave little weight to Dr. Groff's January 25, 2017 Physical Capacities Evaluation. (Tr. 24, 519–23.) The ALJ stated:

[Dr. Groff] opined that the claimant could lift and carry five pounds for two hours.[6] Dr. Groff said the claimant could stand and walk for less than two hours in an eight-hour workday and could sit for less than six hours in an eight-hour workday. He said the claimant was limited in pushing and pulling. Dr. Groff opined that the claimant could not crouch or crawl but could occasionally perform the remaining postural activities. Dr. Groff said the claimant should avoid all

_____

[6] While not very legible, Dr. Groff's Physical Capacities Evaluation seems to indicate that Plaintiff could occasionally lift and/or carry five pounds for *two minutes*, not two hours as stated by the ALJ, and frequently lift and/or carry one to two pounds for *two minutes*. (Tr. 519.) Dr. Groff also indicated that Plaintiff must periodically alternate sitting and standing to relieve the pain or discomfort. (*Id.*)

exposure to extreme heat and hazards and should avoid even
moderate exposure to the remaining environmental conditions. He
said the claimant would need to lie down two or three times an hour.
Dr. Groff opined that the claimant could not perform sedentary work
on a regular and continuing basis. He said if the claimant were
employed, he would miss four to five days of work a month. (Exs.
15F, 16F/4)

(*Id.*) The ALJ gave Dr. Groff's opinions little weight because:

The reported findings and limitations are inconsistent with Dr. Groff's
treatment notes, which show treatment for routine primary care
issues. Although the claimant reported back pain and was referred
to pain management, the exams were mostly normal. See Exs.
4F/10, 17, 16F/1, 12, 25. Although the claimant consulted
neurosurgeons and pain specialists, these doctors did not impose
work preclusive limitations[] (Exs. 8F, 10F, 12F, 14F). Dr. Groff's
opinion was sought for the purpose of this application and is
inconsistent with the record as a whole.

(Tr. 24.)

The ALJ gave significant weight to Dr. Robert Steele's January 20, 2015

non-examining opinion that Plaintiff could perform a reduced range of light work.

(Tr. 23, 96-98.) The ALJ explained that Dr. Steele's opinion was "consistent with

the clinical exams, objective imaging studies and electrodiagnostic testing." (Tr.

23 (citing Exs. 4F/17, 5F, 11F, 12F, 14F, 18F).)

The ALJ concluded that the RFC assessment was "supported by the

medical evidence of record, some of the opinions, and the following additional

factors":

[T]he clinical exams, objective imaging studies, and electrodiagnostic
studies are inconsistent with a finding that the claimant is disabled
and unable to work. See Exs. 4F/17, 5F, 11F, 12F, 14F, 18F.

On May 2, 2013, Dr. Groff examined the claimant for a DOT exam and certified the claimant's health and fitness for two years[] (Ex. 4F/10). The claimant said he could not work because of his physical condition and the effects of his pain medications. However, the claimant told Dr. Groff that there were no pain medication side effects[] (Ex. 16F/12, 47). . . .

The claimant is able to drive, and he is able to shop in stores. He said he does some small chores. The claimant told Dr. Knox that he went to the beach and cared for a grandchild on Saturdays[] (Ex. 7F). In June 2016, the claimant told Dr. Griz that he watched his grandchildren[] (Ex. 13F). The claimant's activities of daily living are consistent with the finding that he can perform a reduced range of light work as described in the [RFC].

The claimant reported using a cane, and the record shows that Dr. Groff prescribed a wheelchair and a cane. Some weight is given to this but it is also noted that doctors often prescribe equipment or medications because the patient requests these items and not based on independent assessment that their patients need the items.

Pursuant to SSR 96-9p, to find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

I find that the claimant is able to perform a reduced range of light work as described in the [RFC]. Additionally, the record does not support a finding that the claimant's use of a cane meets the requirements of SSR 96-9p.

(Tr. 25-26.) The ALJ determined that while Plaintiff was unable to perform any

past relevant work, he was able to perform the requirements of representative occupations, such as a parking lot cashier, a gate attendant, and a mail sorter. (Tr. 26-27.)

## C. Analysis

The Court agrees with Plaintiff that the ALJ improperly discounted Dr. Groff's opinions, including the need for a cane, and the ALJ's RFC assessment is not supported by substantial evidence. First, although the ALJ stated that Dr. Groff was treating Plaintiff for routine primary care issues, the record demonstrates that in addition to such issues, Dr. Groff was regularly treating Plaintiff for chronic pain, referring him to appropriate specialists, including neurosurgeons, when necessary.

The ALJ also stated that Plaintiff's examinations were "mostly normal." (Tr. 24.) While this may be true for pre-onset date examinations and, to some extent, for a few more recent examinations (Tr. 437, 527,[7] 538, 548, 559, 562,[8] 567, 569-70, 572-76, 585), Dr. Groff's treatment notes were nevertheless consistent with Plaintiff's complaints of disabling symptoms and with the record as a whole.

The examinations consistently reflected moderate to severe pain levels and

---

[7] On that visit, Plaintiff was "ambulatory with support of straight cane in [his] left hand." (Tr. 527.)

[8] On that visit, Dr. Groff assessed left hip pain, left sciatica, and chronic low back pain, and noted that Plaintiff would be referred for a second neurosurgical opinion to address his symptoms. (Tr. 562.)

some adverse side effects from medications.[9]  (*See* Tr. 496 (reporting "extreme pain 24 hours a day in spite of pain medications and wearing pain patches"); Tr. 580 & 603 (reporting severe left hip pain level of 8 on a scale of 0 to 10); Tr. 418 (reporting a pain level of 7 on a scale of 0 to 10); Tr. 420-21, 437, 452 & 458 (reporting a pain level of 6 on a scale of 0 to 10); Tr. 484, 501 & 526 (reporting a pain level of 5 on a scale of 0 to 10); Tr. 490, 560, 574 & 579 (reporting a pain level of 4 on a scale of 0 to 10, despite utilizing Nucynta and a Fentanyl patch); *but see* Tr. 537 (noting a pain level of 3 on a scale of 0 to 10).)  On some visits, Plaintiff moved slowly and hesitantly and/or with a limp.  (Tr. 501, 508-09.)  He also used a cane for ambulation due to the pain, which was prescribed by Dr. Groff.  (Tr. 582; *see also* Tr. 482, 488, 493, 522, 527, 592; *cf.* Tr. 603 (noting that Plaintiff "was not being given his pain medications and not being allowed to ambulate with his cane which caused acute increase in his chronic back pain").)  His symptoms were exacerbated by sitting, standing, walking, climbing stairs, bending, and twisting, among others.  (Tr. 420, 451, 458, 466, 500, 595.)  The pain interfered with his daily activities and his sleep.  (Tr. 418, 420, 422, 454-55, 460.)

Plaintiff was diagnosed with, *inter alia*, chronic low back pain with left-sided sciatica, lumbar spine radiculopathy, and left foot pain, numbness, tingling, and

---

[9] Plaintiff reported sweating, dizziness, and muscle weakness with the use of Fentanyl.  (Tr. 51, 501, 508.)  For that reason, he was switched to morphine.  (Tr. 51.)

weakness.  (*See, e.g.*, Tr. 418, 452, 483-84, 488-89, 592, 604, 617.)  His

examinations showed, *inter alia*: back, arm, and leg pain; extremity weakness,

tingling, and numbness; abnormal gait; musculoskeletal swelling, spasm, and

tenderness; arthritis; a positive Spurling's test; and a decreased range of motion

in the left hip.  (Tr. 421, 459, 467, 485, 490-91, 493, 502, 509, 551, 579, 582,

595-97.)  After his lumbar spinal fusion in 2001, Plaintiff underwent a number of

epidural steroid injections without relief.  (*See* Tr. 418-20, 454-55, 457, 461, 466.)

 He was also treated with bed rest, anti-inflammatory medications, and pain

medications.  (Tr. 466.)  His treatment notes reflect that he failed conservative

treatment, including activity modification, ice, heat, medications, and physical

therapy.  (Tr. 418, 422, 454-55, 457, 460.)  Plaintiff was referred for a trial of a

spinal cord stimulator.  (Tr. 483.)  Although he was initially approved for the trial,

he had to go through the approval process again when his insurance coverage

changed.[10]  (Tr. 500.)

     The results of the diagnostic studies were consistent with Plaintiff's

complaints and treatment regimen.  (*See, e.g.*, Tr. 469 (noting "significant

degenerative disease").)  For example, a lumbar MRI from August 13, 2014

showed disc protrusions on the left side at L2-3 and L3-4, and a left-sided

subarticular disc herniation at L4-5.  (Tr. 426-27, 466 (describing the disc bulge at

---

[10] With that process underway, Plaintiff was scheduled for a neurosurgical
consultation on January 17, 2017.  (Tr. 500.)

L3-4 and L4-5 as "significant").) A cervical MRI from the same date showed a disc herniation at T3-4 and a "[p]rotruding C3-4 intervertebral disc demonstrating eccentricity to the left." (Tr. 428-29. ) A thoracic MRI from February 21, 2015 showed multilevel degenerative changes, most pronounced at T3-T4, and partial visualization of a stable, benign, left intercostal lipoma. (Tr. 475.) A CT scan of the lumbar spine from February 27, 2015 showed posterior spinal fusion at L5-S1.[11] (Tr. 606.) Finally, an EMG with nerve conduction study from February 1, 2016 was abnormal and showed "changes consistent with a chronic radiculopathy involving the left L5 and to a lesser degree S1 root." (Tr. 616.) The report stated:

> Changes seen on this study may correlate with the patient's back and left lower extremity pain. During the course of the study, however, the patient also reported loss of sensation in the perineal area . . . . He also stated that occasionally both legs will shake involuntarily. . . . I would wonder on the basis of the patient's additional symptoms if there may be more higher [sic] involvement of the lumbar spine possibly compromising the level of the conus. I advised the patient to recontact the referring neurosurgeons for further evaluation.

(*Id.*)

In light of these results and his regular treatment of Plaintiff, Dr. Groff

---

[11] A lumbar myelogram from March 18, 2015 showed status post posterior fusion at L5-S1 without evidence of hardware complication and no myelographic block. (Tr. 473.) A lumbar CT post myelogram from March 18, 2015 showed post-surgical changes status post L5-S1 discectomy, interbody fusion, and posterior fusion without evidence of hardware complication; no myelographic block; and mild multilevel degenerative changes of the lumbar spine. (Tr. 477-78.)

prescribed a cane and a wheelchair, and opined that Plaintiff would be unable to perform even sedentary work on a regular and continuing basis.[12]  (Tr. 522, 582.) While the ALJ points out that Plaintiff's neurosurgeons did not impose work preclusive limitations, these specialists worked in conjunction with Dr. Groff who was in a better position to impose such limitations given his regular and continuous treatment of Plaintiff's chronic conditions.  Further, the fact that Dr. Groff's Physical Capacities Evaluation was used to assist in Plaintiff's disability application in no way undermines his opinions, which, as shown above, were not inconsistent with the treatment records, the objective findings, and the record as a whole.

Moreover, the ALJ's findings regarding Plaintiff's need for a cane seem inconsistent.  Throughout her decision, the ALJ acknowledged that Plaintiff was prescribed a cane and was using one regularly, including at the hearing before the ALJ.  (Tr. 21-26, 37.)  The ALJ gave some weight to the fact that Plaintiff was using a cane.  (Tr. 25.)  Further, the ALJ accorded great weight to the finding that Plaintiff was able to walk with a cane after he was admitted to the hospital on February 28, 2015 with pain going down his legs, no pulse in his foot, and

---

[12] It appears that the ALJ either overlooked or mis-characterized Dr. Groff's opinion that Plaintiff could occasionally lift and/or carry five pounds for *two minutes* and frequently lift and/or carry one to two pounds for *two minutes*, when the ALJ stated that Plaintiff could do so for two hours.  (*Compare* Tr. 24 *with* Tr. 519.)  This factual inconsistency with the record further undermines the ALJ's findings as to Dr. Groff's opinions and her RFC assessment as a whole.

inability to walk upon admission.  (Tr. 21.)  Yet, in her RFC assessment, the ALJ apparently ignored the need for a cane, reasoning that "doctors often prescribe equipment . . . because the patient requests [it] and not based on independent assessment that their patients need [it]."  (Tr. 25.)  To the extent the ALJ found this to be the case here, her finding is not supported by substantial evidence.

Plaintiff's prescription for, and use of, a cane is well documented in the record.  (*See* Tr. 482, 488, 493, 522, 527, 582, 592.)  Moreover, Plaintiff's need for a cane is also supported by the record due to the chronic pain in his back, hip, and lower extremities, as well as the numbness and weakness in his lower extremities.  (*See* Tr. 488, 493, 580-82, 603; *see also* Tr. 58-59 (stating that Dr. Groff thought it was a good idea for Plaintiff to use a cane and a wheelchair); Tr. 65 & 443 ("I can't stand but a few minutes[.]"); Tr. 497 (stating that Plaintiff "was in pain and had a difficult time moving or sitting for any length of time"); Tr. 64-65 (testifying that Plaintiff could walk about ten minutes with his cane, but he did not need it in his house because it was small).)  When Dr. Groff prescribed a cane and a wheelchair on March 6, 2015 after evaluating Plaintiff for severe left hip pain, he noted that Plaintiff's gait was antalgic, the left hip range of motion was decreased with pain, the new pain medicine had not adequately helped his severe pain, and Plaintiff needed to follow up with a neurosurgeon regarding his back and hip pain.  (Tr. 580-82.)

Of note, Dr. Groff's prescription on March 6, 2015 came soon after

Plaintiff's February 28, 2015 admission to Memorial Hospital where Plaintiff presented with "intractable back pain radiating into the left leg" with weakness and numbness in his left lower extremity and diminished dorsalis pedis pulses bilaterally. (Tr. 603-04.) During the same admission, it was noted that Plaintiff suffered "acute increase in his chronic back pain" due, in part, to "not being allowed to ambulate with his cane" at the facility from which he was transferred. (Tr. 603.) Based on the foregoing, the ALJ's findings regarding Plaintiff's need for a cane appear somewhat inconsistent and unsupported by substantial evidence.

Further, the ALJ's RFC assessment is not supported by substantial evidence. As shown above, the ALJ did not provide good reasons, supported by substantial evidence, for discounting Dr. Groff's opinions. To the extent the ALJ relied on Dr. Steele's January 20, 2015 non-examining opinions, those opinions predated a substantial part of the medical record, including several diagnostic test results from February and March of 2015, an EMG study from February 2016, and Dr. Groff's Physical Capacities Evaluation from January 2017. Finally, to the extent the ALJ relied on Plaintiff's daily activities to discredit his complaints, to discount Dr. Groff's opinions, and/or to support the RFC assessment for a reduced range of light work, the record supports activities that are even more limited than described by the ALJ. For instance, although the ALJ stated that Plaintiff watched his grandchildren, he did so sporadically and while his wife was

also at the house.  (Tr. 25, 49, 61.)  Moreover, even when his grandchildren were

there, Plaintiff was able to "la[y] down a lot," when needed.  (Tr. 62.)  To the

extent Plaintiff drove, his driving was limited to the doctor's office, the pharmacy,

and the store, where he would use a wheelchair.  (Tr. 49, 53, 59.)  Further,

Plaintiff was only able to do small chores, like doing the dishes.  (Tr. 53, 443, 507

(noting "partially disabling" symptoms).)

Based on the foregoing, the ALJ improperly discounted Dr. Groff's

opinions, including the need for a cane, and her RFC assessment is not

supported by substantial evidence.  Therefore, this case will be remanded for

further proceedings to the ALJ to conduct the five-step sequential evaluation

process in light of all the evidence.

Accordingly, it is **ORDERED**:

1.      The Commissioner's decision is **REVERSED** pursuant to sentence

four of 42 U.S.C. § 405(g) and **REMANDED** with instructions to the ALJ to

conduct the five-step sequential evaluation process in light of all the evidence,

including the opinion evidence from Dr. Groff, and conduct any further

proceedings deemed appropriate.

2.      The Clerk of Court is directed to enter judgment accordingly,

terminate any pending motions, and close the file.

3.      In the event that benefits are awarded on remand, any § 406(b) or §

1383(d)(2) fee application shall be filed within the parameters set forth by the

Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012). This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on August 13, 2019.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record